STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-06-254

CITY OF SOUTH PORTLAND

        Plaintiff,

                                                  ORDER ON CROSS-MOTION
    v.                                            FOR SUMMARY JUDGMENT


MAINE MUNICIPAL ASSOCIATION PROPERTY              DONALD L. GARBRECHT
& CASUALTY POOL,                                      LAW LIBRARY

        Defendants.                               JAN 15 2007


This case comes before the Court on Defendant Maine Municipal

Association Property & Casualty Pool's Motion for Summary Judgment and

Plaintiff City of South Portland's Cross-Motion for Summary Judgment pursuant

to M.R. Civ. P. 56.

## FACTUAL BACKGROUND

The facts of this case are undisputed. The case arises out of an action in

Superior Court in which a jury awarded $380,000 in statutory damages to a real

estate developer ("Frustaci") pursuant to 23 M.R.S.A. § 3029. *Frustaci v. City of S.

Portland*, 2002 Me. Super. LEXIS 235 (Me. Super. Ct., Sept 25, 2002) (C.J.

Humphrey). Frustaci suffered a loss of property value due to a decision by the

City of South Portland to discontinue two roads leading to his Cape Elizabeth

property.

The Defendant Maine Municipal Association Property & Casualty Pool

(the "Pool") brings this motion for summary judgment pursuant to a claim for

indemnification by plaintiff City of South Portland (the "City") pursuant to M.R.

1

Civ. P. 56 and under a valid insurance contract between the City and the Pool

(the "Policy"). The City brings a cross-claim for summary judgment.

At issue is whether the Pool has a duty to indemnify the City for the

Damages paid to Frustaci. Specifically, were the damages that were awarded as

compensation for the diminished value of Frustaci's land the equivalent of a

"taking" or "inverse condemnation" and thus excluded under the Policy's

inverse condemnation exclusion (the "Exclusion")? The Exclusion reads:

> This Certificate does not cover claims for loss or damage or any liability of any Members arising out of or in any way connected with the operation of the principles of adverse possession, eminent domain, condemnation proceedings, or inverse condemnation proceedings or inverse condemnation by whatever name called regardless of whether such claims are made directly against the Members or by virtue of any agreement entered into by or on behalf of the Members.

(Slocum Aff. Ex. 1, p. 11.)

## DISCUSSION

1. <u>Summary Judgment Standard</u>.

Summary judgment is proper where there exist no genuine issues of

material fact such that the moving party is entitled to judgment as a matter of

law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770

A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a

fact-finder to choose between competing versions of the truth at trial." *Parrish v.

Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the

potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750

A.2d 573, 575. "If material facts are disputed, the dispute must be resolved

through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When

a defendant seeks summary judgment, a "plaintiff must establish a prima facie

2

case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

### 2.  Are Any Material Facts in Dispute Under the Policy?

"An insurance policy is a contract, which provides terms delineating the categories of liabilities the insurer commits itself to cover and the extent of coverage available for liabilities covered." *Korhonen v. Allstate Ins. Co.*, 2003 ME 77, ¶ 9, 827 A.2d 833, 836 (citations omitted). Interpretation of the terms of an insurance policy is a matter of law and is reviewed de novo by the court. *Id.* A term will be deemed ambiguous if it is "reasonably susceptible of different interpretations." *Id.* (*quoting Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me. 1996)). If the contract is ambiguous, it "will be strictly construed to resolve ambiguities in favor of coverage." *Id.* (*citing Massachusetts Bay Ins. Co. v. Ferraialo Constr. Co.*, 584 A.2d 608, 609 (Me. 1990)).

The existence of the Policy is not at issue. At issue are the interpretation of the Exclusion in the Policy and the application of the stipulated facts to that Exclusion. Because there are no material facts at issue, summary judgment is appropriate. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

### 3.  Does the Pool Have a Duty to Indemnify the City for the Damages Paid to Frustaci?

#### a.  Were the Damages Awarded Within the Meaning of the Exclusion?

As a rule, ambiguities in insurance policies are resolved in favor of coverage. *Massachusetts Bay Ins. Co..* 584 A.2d at 609.

3

The Pool contends that the Exclusion is broadly written and includes all claims that relate to a "taking" or "inverse condemnation." Further, that the definition of "inverse condemnation" includes "all sorts of actions within [a municipality's] power that diminish property values." Thus, it is argued, though the Damages paid by the City to Frustaci concededly do not amount to a constitutional taking, they do amount to inverse condemnation, are within the meaning of the Exclusion, and therefore the Pool has no duty to indemnify the City. Again, the pertinent section of the Exclusion is:

> This Certificate does not cover claims for loss or damage or any liability of any Members arising out of or in any way connected with the operation of the principles of adverse possession, eminent domain, condemnation proceedings, or inverse condemnation proceedings or inverse condemnation by whatever name called . . .

(Slocum Aff. Ex. 1, p. 11.).

In support of its claim the Pool cites Chief Justice Humphrey's Order characterizing relief under 23 M.R.S.A. § 3029 as a statutory "taking of sorts." *Frustaci v. City of S. Portland*, 2002 Me. Super. LEXIS 235, p. 12 (Me. Super. Ct., Sept 25, 2002) (Humphrey, C.J.).

Further support is found in a per curium decision by the First Circuit that considered a similar insurance policy clause. *See Town of Farmington v. Tudor Insurance Co.*, 1994 U.S.app. Lexis 24103. That case was based on a successful damages suit by a Maine developer against a town because he was "frustrated by the Town's refusal to allow more than two sewer hook-ups a year." *Id.* at 1. In the subsequent action brought by the town seeking a declaratory judgment that the insurance company had a duty to defend in the underlying suit, the court upheld summary judgment to the insurance company. *Id.* The court affirmed the

4

magistrate's ruling that "inverse condemnation" is an unambiguous term and includes "a cause of action against a government agency to recover the value of property. . . . " *Id. (quoting* Black's Law Dictionary 740 (5th ed. 1979)). Thus, the court concluded that the town's limitation of sewer lines to a developer's property fit within the definition of inverse condemnation. *See id.*

In contrast, the City argues that inverse condemnation claims were specifically dismissed at trial and thus the Frustaci judgment does not fall within the Exclusion. In support of their contention the City cites to the City's appeal to the Law Court on the *Frustaci* decision. See *Frustaci v. City of S. Portland*, 2005 ME 101, 879 A.2d 1001. In that appeal the City challenged the validity of the damages awarded under 23 M.R.S.A. § 3029 in light of the Superior Court's finding that no physical or regulatory taking had occurred. *Id.* ¶5, 879 A.2d at 1003. The Court stated that "the underlying authority for the award of damages in this case involving road discontinuances, contains neither the word 'taking' nor the phrase 'just compensation,' and does not implicate a takings analysis." *Id.* ¶ 10, 879 A.2d at 1005. Thus, the Court concluded that relief under § 3029 was not limited to a constitutional takings argument. *Id.* ¶ 11, 879 A.2d at 1005. Indeed it expressly separated Frustaci's inverse condemnation claim from the statutory relief granted at trial. Id. ¶ 12, 879 A.2d at 1005. [1]

---

[1] Frustaci's inverse condemnation claim was dismissed at trial. *Frustaci v. City of S. Portland*, 2002 Me. Super. LEXIS 235, 4 (Delahanty, J) (stating that "plaintiff's inverse condemnation claim cannot stand because it rests on a "taking" of property which the court has determined is not present in this case")

The City distinguished *Town of Farmington v. Tudor Insurance Co.* by arguing that the *Frustaci* appeal supercedes any case law from the First Circuit, particularly an unpublished per curium decision. But the argument cannot stand. The reasoning in the two cases is not parallel. The Law Court in *Frustaci* held that the plaintiff was due damages under the statute even if the City's violation did not rise to a constitutional taking. *Id.* ¶ 11, 879 A.2d at 1005. That Court was considering the construction of a Maine Statute. *See Id.* The *Town of Farmington* Court was considering an insurance policy clause and the definition of "inverse condemnation" thereunder. *See Town of Farmington*, 1994 U.S.app. Lexis 24103. The case before this court is analogous to *Town of Farmington. See id.*

Thus the question before the Court is, as a matter of law, does the relief granted to Frustaci amount to inverse condemnation and thus falls within the Exclusion? The First Circuit has defined "inverse condemnation" as something less than a constitutional taking. *See id.* Specifically, that court defines inverse condemnation as "a cause of action against a government agency to recover the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed. . . ." *Id. (quoting Black's Law Dictionary* 740 (5th ed. 1979).

The First Circuit's reasoning is persuasive to this Court.

b. Estoppel and Waiver

The City further argues that the Pool should be estopped from its claim regarding indemnification, or alternately that it waived its claim regarding indemnification because it has acknowledged that Maine has consistently

6

awarded damages for road discontinuances whether or not there is a "taking" of property. The City, however, concedes that the Pool has been consistent in its refusal to indemnify under the inverse condemnation exclusion. Because the Court finds the First Circuit's definition of "inverse condemnation" persuasive this argument cannot stand because it depends on "inverse condemnation" having a solely constitutional foundation.

    c.  <u>Public Policy Argument</u>

Likewise, although the City rightfully argues Maine's long-standing policy of liberal construction of insurance policies in favor of the insured, *see Saucier v. Allstate Ins. Co.*, 1999 ME 197, 742 A.2d 482, 287 (1999), the argument is not relevant if "inverse condemnation" is, by definition, something more than a constitutional claim. Though the Court rejects the Pool's argument that the Exclusion should be broadly construed, based upon the foregoing definition of "inverse condemnation," the Court holds that the relief granted to Frustaci falls squarely under the Exclusion.

**The entry is:**

Motion for Summary Judgment is GRANTED in favor of the Defendant.
Plaintiff's Motion for Summary Judgment is DENIED.

DATE: _September 5, 2007_

_____
Roland A. Cole
Justice, Superior Court

7

F COURTS
ınd County
3ox 287
ne 04112-0287

NICOLE LORENZATTI ESQ
PO BOX 442
PORTLAND ME 04112

F COURTS
ınd County
3ox 287
ne 04112-0287

WILLIAM HEWITT ESQ
ONE MONUMENT SQUARE
PORTLAND ME 04101

STATE OF MAINE                         SUPERIOR COURT
CUMBERLAND, ss.                        CIVIL ACTION
                                       DOCKET NO: CV-06-254
                                       RAC. CuM- 9/21 2007

CITY OF SOUTH PORTLAND

                    Plaintiff,         **AMENDED**
                                       **ORDER ON CROSS-MOTION**
        v.                             **FOR SUMMARY JUDGMENT**

MAINE MUNICIPAL ASSOCIATION  and            STATE OF MAINE
MAINE MUNICIPAL ASSOCIATION           Cumberland, ss, Clerk's Office
PROPERTY & CASUALTY POOL,                  SUPERIOR COURT

                    Defendants.              SEP 21 2007

This case comes before the Court on Defendants Maine Municipal

Association and Maine Municipal Association Property & Casualty Pool's

Motion for Summary Judgment and Plaintiff City of South Portland's Cross-

Motion for Summary Judgment pursuant to M.R. Civ. P. 56.

## FACTUAL BACKGROUND

The facts of this case are undisputed.  The case arises out of an action in

Superior Court in which a jury awarded $380,000 in statutory damages to a real

estate developer ("Frustaci") pursuant to 23 M.R.S.A. § 3029.  *Frustaci v. City of S.*

*Portland,* 2002 Me. Super. LEXIS 235 (Me. Super. Ct., Sept 25, 2002) (C.J.

Humphrey).  Frustaci suffered a loss of property value due to a decision by the

City of South Portland to discontinue two roads leading to his Cape Elizabeth

property.

The Defendants Maine Municipal Association and Maine Municipal

Association Property & Casualty Pool (the "Pool") brings this motion for

summary judgment pursuant to a claim for indemnification by plaintiff City of

South Portland (the "City") pursuant to M.R. Civ. P. 56 and under a valid

1

insurance contract between the City and the Pool (the "Policy"). The City brings a cross-claim for summary judgment.

At issue is whether the Pool has a duty to indemnify the City for the Damages paid to Frustaci. Specifically, were the damages that were awarded as compensation for the diminished value of Frustaci's land the equivalent of a "taking" or "inverse condemnation" and thus excluded under the Policy's inverse condemnation exclusion (the "Exclusion")? The Exclusion reads:

> This Certificate does not cover claims for loss or damage or any liability of any Members arising out of or in any way connected with the operation of the principles of adverse possession, eminent domain, condemnation proceedings, or inverse condemnation proceedings or inverse condemnation by whatever name called regardless of whether such claims are made directly against the Members or by virtue of any agreement entered into by or on behalf of the Members.

(Slocum Aff. Ex. 1, p. 11.)

## DISCUSSION

### 1. Summary Judgment Standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*,

2

1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

2. Are Any Material Facts in Dispute Under the Policy?

"An insurance policy is a contract, which provides terms delineating the categories of liabilities the insurer commits itself to cover and the extent of coverage available for liabilities covered." *Korhonen v. Allstate Ins. Co.*, 2003 ME 77, ¶ 9, 827 A.2d 833, 836 (citations omitted). Interpretation of the terms of an insurance policy is a matter of law and is reviewed de novo by the court. *Id.* A term will be deemed ambiguous if it is "reasonably susceptible of different interpretations." *Id.* (*quoting Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me. 1996)). If the contract is ambiguous, it "will be strictly construed to resolve ambiguities in favor of coverage." *Id.* (*citing Massachusetts Bay Ins. Co. v. Ferraialo Constr. Co.*, 584 A.2d 608, 609 (Me. 1990)).

The existence of the Policy is not at issue. At issue are the interpretation of the Exclusion in the Policy and the application of the stipulated facts to that Exclusion. Because there are no material facts at issue, summary judgment is appropriate. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

3. Does the Pool Have a Duty to Indemnify the City for the Damages Paid to Frustaci?

   a. Were the Damages Awarded Within the Meaning of the Exclusion?

As a rule, ambiguities in insurance policies are resolved in favor of coverage. *Massachusetts Bay Ins. Co.*. 584 A.2d at 609.

The Pool contends that the Exclusion is broadly written and includes all claims that relate to a "taking" or "inverse condemnation." Further, that the definition of "inverse condemnation" includes "all sorts of actions within [a municipality's] power that diminish property values. Thus, it is argued, though the Damages paid by the City to Frustaci concededly do not amount to a constitutional taking, they do amount to inverse condemnation, are within the meaning of the Exclusion, and therefore the Pool has no duty to indemnify the City. Again, the pertinent section of the Exclusion is:

> This Certificate does not cover claims for loss or damage or any liability of any Members arising out of or in any way connected with the operation of the principles of adverse possession, eminent domain, condemnation proceedings, or inverse condemnation proceedings or inverse condemnation by whatever name called . . .

(Slocum Aff. Ex. 1, p. 11.).

In support of its claim the Pool cites Chief Justice Humphrey's Order characterizing relief under 23 M.R.S.A. § 3029 as a statutory "taking of sorts." *Frustaci v. City of S. Portland*, 2002 Me. Super. LEXIS 235, p. 12 (Me. Super. Ct., Sept 25, 2002) (Humphrey, C.J.).

Further support is found in a per curium decision by the First Circuit that considered a similar insurance policy clause. *See Town of Farmington v. Tudor Insurance Co.*, 1994 U.S.app. Lexis 24103. That case was based on a successful damages suit by a Maine developer against a town because he was "frustrated by the Town's refusal to allow more than two sewer hook-ups a year." *Id.* at 1. In the subsequent action brought by the town seeking a declaratory judgment that the insurance company had a duty to defend in the underlying suit, the court upheld summary judgment to the insurance company. *Id.* The court affirmed the

4

magistrate's ruling that "inverse condemnation" is an unambiguous term and includes "a cause of action against a government agency to recover the value of property. . . . " *Id. (quoting* Black's Law Dictionary 740 (5th ed. 1979)). Thus, the court concluded that the town's limitation of sewer lines to a developer's property fit within the definition of inverse condemnation. *See id.*

In contrast, the City argues that inverse condemnation claims were specifically dismissed at trial and thus the Frustaci judgment does not fall within the Exclusion. In support of their contention the City cites to the City's appeal to the Law Court on the *Frustaci* decision. See *Frustaci v. City of S. Portland,* 2005 ME 101, 879 A.2d 1001. In that appeal the City challenged the validity of the damages awarded under 23 M.R.S.A. § 3029 in light of the Superior Court's finding that no physical or regulatory taking had occurred. *Id.* ¶5, 879 A.2d at 1003. The Court stated that "the underlying authority for the award of damages in this case involving road discontinuances, contains neither the word 'taking' nor the phrase 'just compensation,' and does not implicate a takings analysis." *Id.* ¶ 10, 879 A.2d at 1005. Thus, the Court concluded that relief under § 3029 was not limited to a constitutional takings argument. *Id.* ¶ 11, 879 A.2d at 1005. Indeed it expressly separated Frustaci's inverse condemnation claim from the statutory relief granted at trial. Id. ¶ 12, 879 A.2d at 1005. [1]

---

[1] Frustaci's inverse condemnation claim was dismissed at trial. *Frustaci v. City of S. Portland,* 2002 Me. Super. LEXIS 235, 4 (Delahanty, J) (stating that "plaintiff's inverse condemnation claim cannot stand because it rests on a "taking" of property which the court has determined is not present in this case")

5

The City distinguished *Town of Farmington v. Tudor Insurance Co.* by arguing that the *Frustaci* appeal supercedes any case law from the First Circuit, particularly an unpublished per curium decision. But the argument cannot stand. The reasoning in the two cases is not parallel. The Law Court in *Frustaci* held that the plaintiff was due damages under the statute even if the City's violation did not rise to a constitutional taking. *Id.* ¶ 11, 879 A.2d at 1005. That Court was considering the construction of a Maine Statute. *See Id.* The *Town of Farmington* Court was considering an insurance policy clause and the definition of "inverse condemnation" thereunder. *See Town of Farmington*, 1994 U.S.app. Lexis 24103. The case before this court is analogous to *Town of Farmington. See id.*

Thus the question before the Court is, as a matter of law, does the relief granted to Frustaci amount to inverse condemnation and thus falls within the Exclusion? The First Circuit has defined "inverse condemnation" as something less than a constitutional taking. *See id.* Specifically, that court defines inverse condemnation as "a cause of action against a government agency to recover the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed...." *Id. (quoting Black's Law Dictionary* 740 (5th ed. 1979).

The First Circuit's reasoning is persuasive to this Court.

b. Estoppel and Waiver

The City further argues that the Pool should be estopped from its claim regarding indemnification, or alternately that it waived its claim regarding indemnification because it has acknowledged that Maine has consistently

awarded damages for road discontinuances whether or not there is a "taking" of property. The City, however, concedes that the Pool has been consistent in its refusal to indemnify under the inverse condemnation exclusion. Because the Court finds the First Circuit's definition of "inverse condemnation" persuasive this argument cannot stand because it depends on "inverse condemnation" having a solely constitutional foundation.

c. Public Policy Argument

Likewise, although the City rightfully argues Maine's long-standing policy of liberal construction of insurance policies in favor of the insured, *see Saucier v. Allstate Ins. Co.*, 1999 ME 197, 742 A.2d 482, 287 (1999), the argument is not relevant if "inverse condemnation" is, by definition, something more than a constitutional claim. Though the Court rejects the Pool's argument that the Exclusion should be broadly construed, based upon the foregoing definition of "inverse condemnation," the Court holds that the relief granted to Frustaci falls squarely under the Exclusion.

**The entry is:**

Motion for Summary Judgment is GRANTED in favor of Defendants Maine Municipal Association and Maine Municipal Association Property & Casualty Pool.

Plaintiff City of South Portland's Motion for Summary Judgment is DENIED.

DATE: September 21, 2007

_____
Roland A. Cole
Justice, Superior Court

7

NICOLE LORENZATTI ESQ
PO BOX 442
PORTLAND ME 04112



WILLIAM HEWITT ESQ
ONE MONUMENT SQUARE
PORTLAND ME 04101