2008 ME 128

**CITY OF SOUTH PORTLAND**

v.

**MAINE MUNICIPAL ASSOCIATION.**

Supreme Judicial Court of Maine.

Argued: April 8, 2008.
Decided: Aug. 7, 2008.

---

Nicole L. Lorenzatti, Esq. (orally), Smith Elliott Smith & Garmey, P.A., Portland, ME, for City of South Portland.

Louise K. Thomas, Esq. (orally), William D. Hewitt, Esq., Pierce Atwood, LLP, Portland, ME, for Maine Municipal Association.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] The City of South Portland appeals from a summary judgment entered in the Superior Court (Cumberland County, *Cole, J.*), in favor of the Maine Municipal Association (MMA). The court entered summary judgment after concluding that MMA had no duty under the policy it issued to the City to indemnify the City for a judgment the City had paid to Joseph Frustaci pursuant to 23 M.R.S. § 3029 (2007), for damages resulting from the City's discontinuance of two public roads that abutted Frustaci's property. Because we conclude that the policy exclusion relied on by MMA to deny indemnification does not clearly exclude from coverage the damages the City is required to pay to Frustaci, we vacate the summary judgment.

## I. BACKGROUND

[¶ 2] In the underlying claim ultimately leading to this appeal, Frustaci was awarded damages against the City. Frustaci owned land abutted by the two roads discontinued by the City, and sued the City for the diminution of the value of his land caused by the road closures. Frustaci asserted a number of different legal theories of liability. *Frustaci v. City of S. Portland,* 2005 ME 101, ¶¶ 2–3, 879 A.2d 1001, 1003. Among those theories were claims that the City's road closure amounted to an unconstitutional taking of his property, that the closures represented an inverse condemnation of his property, and that he was entitled to statutory damages pursuant to 23 M.R.S. §§ 3026, 3029 (2007). *See Frustaci,* 2005 ME 101, ¶¶ 2–3, 879 A.2d at 1003. By the time of trial, the Superior Court had dismissed all of Frustaci's claims except for the statutory claim pursuant to 23 M.R.S. §§ 3026, 3029. *See*

*Frustaci,* 2005 ME 101, ¶¶ 3, 4, 879 A.2d at 1003. Frustaci's suit proceeded to trial on this statutory claim alone. *See id.* A jury awarded Frustaci damages of $380,000. *Id.*

[¶ 3] The City appealed from the judgment, arguing that the Superior Court was required to dismiss Frustaci's statutory claim because, as a matter of law, damages are not available pursuant to section 3029 in the absence of a physical or regulatory taking of property. *See id.* ¶¶ 5, 8, 879 A.2d at 1003, 1004. The City contended that, because the trial court had already dismissed Frustaci's takings and inverse condemnation claims, Frustaci could not prevail on the statutory claim. *See id.* We rejected the City's argument, concluding that the statutory right to seek damages resulting from a municipality's decision to discontinue a road implicates no takings analysis, "constitutional or otherwise," and affirmed the judgment in favor of Frustaci. *See id.* ¶¶ 10, 16, 879 A.2d at 1005, 1007.

[¶ 4] The City was insured by both Great American Insurance Company and MMA. The City sought indemnification for the *Frustaci* judgment from both of these insurers. Great American Insurance indemnified the City for one-half of the total judgment against the City. Throughout the course of the *Frustaci* case, MMA provided the City with letters indicating that it would not indemnify the City for any judgment against the City in favor of Frustaci. The letters cite an inverse condemnation exclusion in the City's policy as the basis on which MMA would deny indemnification to the City.[1] Following the judgment, MMA refused to indemnify the City for any portion of the judgment based on the "inverse condemnation" exclusion in the City's policy.

---

1. Maine Municipal Association also contends that the "property damage" exclusion in the insurance contract between itself and the City is a basis for denying indemnification to the City. We find this argument unpersuasive and do not address it further.

[¶ 5]   The City filed a declaratory judgment action against MMA.  MMA then filed a motion for a summary judgment and the City filed a cross-motion for a summary judgment.  After a hearing in September of 2007, the Superior Court entered a summary judgment in favor of MMA and denied the City's motion.  The court concluded that, because Frustaci's claim against the City was a cause of action against a government agency to recover the value of property, it was subsumed within the insurance policy's exclusion of liabilities associated with inverse condemnation.  The City appealed from the court's decision.

## II.   DISCUSSION

■   [¶ 6]   The City contends that the inverse condemnation exclusion contained in its insurance agreement with MMA does not apply to the circumstances of this judgment because principles of inverse condemnation are inextricably linked to property takings law, and therefore do not affect the section 3029 claim pursuant to which Frustaci recovered damages.

■       [¶ 7]   The interpretation of an insurance contract is a question of law that we review de novo.  *Pelkey v. Gen. Elec. Capital Assurance Co.*, 2002 ME 142, ¶ 10, 804 A.2d 385, 387.  A provision of an insurance contract "is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought."  *Id.; Hall v. Acadia Ins. Co.*, 2002 ME 110, ¶ 6, 801 A.2d 993, 995.  Any ambiguity will be construed strictly against the insurer and liberally in favor of the insured.  *Pelkey*, 2002 ME 142, ¶ 10, 804 A.2d at 387.

[¶ 8]   The relevant contract language at issue in MMA's contract with the City provides:

## C.   INVERSE CONDEMNATION EXCLUSION

This Certificate does not cover claims for loss or damage or any liability of any Members arising out of or in any way connected with the operation of the principles of adverse possession, eminent domain, condemnation proceedings, or inverse condemnation proceedings or inverse condemnation by whatever name called regardless of whether such claims are made directly against the Members or by virtue of any agreement entered into by or on behalf of the members.

■   [¶ 9]   We have defined inverse condemnation to mean "[a] cause of action against a government agency to recover the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed."  *Larrabee v. Town of Knox*, 2000 ME 15, ¶ 4 n. 3, 744 A.2d 544, 545 (quotation marks omitted).  In other words, inverse condemnation affords compensation to a property owner when the government unconstitutionally takes his property in some indirect way.

[¶ 10]   Our decision in the underlying case between Frustaci and the City concluded that Frustaci's claim for damages pursuant to 23 M.R.S. § 3029 was entirely independent of his inverse condemnation claim, and the fact that Frustaci did not prevail on the inverse condemnation claim at trial did not bar his recovery pursuant to section 3029.  *Frustaci*, 2005 ME 101, ¶ 10, 879 A.2d at 1005.  We refused to "import a constitutional takings analysis into section 3026 [or 3029]."  *See id.*  Instead we observed that the statute was "devoid of any taking references, constitutional or otherwise."  *Id.*

[¶ 11]   The language of the exclusion indicating that the policy will not cover

amounts paid out which are "in any way connected with" inverse condemnation awards "by whatever name called" does not alter this result. Because we have already determined that no takings analysis, "constitutional or otherwise," was implicated by Frustaci's section 3029 claim, *Frustaci*, 2005 ME 101, ¶ 10, 879 A.2d at 1005, the principles of inverse condemnation were not the basis of the City's liability.

[¶ 12]  Although there is some similarity between claims asserting a taking, and those made pursuant to sections 3026 and 3029, in that they arise from a voluntary decision of the City to take some action that diminishes the value of an individual's property, we made clear in *Frustaci* that the two claims do not share a common legal basis. Because the language of the exclusion does not clearly address coverage for claims that do not involve takings, its application to Frustaci's claim is ambiguous at best. Ambiguities in insurance contracts must be resolved in favor of the insured. *See Pelkey*, 2002 ME 142, ¶ 10, 804 A.2d at 387. Had MMA wanted to make its "inverse condemnation" exclusion applicable to all situations in which the City's liability was based on its having decided voluntarily to impinge in any way upon the property of an individual, it could have drafted the contract language to say so explicitly. Accordingly, the Superior Court erred in granting summary judgment on the basis that the inverse condemnation award should bar indemnification.

The entry is:

Summary judgment vacated. Remanded for entry of a judgment declaring that Maine Municipal Association is responsible for indemnifying the City of South Portland.