STATE OF MAINE                           BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                          DOCKET NO. BCD-CV-2020-23


DAVID POTTLE, an individual residing in     )
Washington County, Maine,                   )
                                            )
LIGHTHOUSE LOBSTER & BAIT, LLC,             )
A Maine limited liability company with its  )
principal place of business in Washington   )
County, Maine, and                          )
                                            )
OCEAN WARRIOR FISHERIES, LLC,               )     **ORDER ON CROSS-MOTIONS FOR**
A Maine limited liability company with its  )     **SUMMARY JUDGMENT**
principal place of business in Washington   )
County, Maine,                              )
                                            )
            Plaintiffs,                      )
                                            )
      v.                                     )
                                            )
                                            )
ACADIA INSURANCE COMPANY,                   )
An Iowa corporation with its principal      )
place of business in Westbrook, Maine,      )
                                            )
            Defendant.                       )


Before the Court are Plaintiffs' and Defendant's cross motions for summary judgment.

Pursuant to agreement of the parties, this matter comes before the Court on a Stipulated Record.

Plaintiffs David Pottle, Lighthouse Lobster & Bait, LLC ("Lighthouse"), and Ocean Warrior

Fisheries, LLC ("Fisheries") are all named insureds under Acadia Insurance Company's

("Acadia's") Commercial Policy CPA 5355931-10 (the "Policy"), effective 10/14/2018 to

10/14/2019. Together, the Plaintiffs move for partial summary judgment under Maine Rule of

Civil Procedure 56 in their favor, alleging that Acadia breached its duty to defend them against

the allegations of an underlying complaint ("Underlying Complaint") filed in federal court.

Acadia has also filed its own motion for summary judgment on the Stipulated Record asserting

1

that Acadia has no duty to defend any of the plaintiffs from the allegations in the underlying complaint. Plaintiffs are represented by Attorney Brent Singer. Defendant Acadia Insurance Company is represented by Attorneys Hillary Bouchard and James Bowie. The Court grants Plaintiffs' partial motion for summary judgment and denies Acadia's motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate if, based on the parties' Stipulated Record, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, 770 A.2d 653. A genuine issue of material fact exists when a factfinder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive. *Id.* A fact is material if it has the potential to affect the outcome of the suit. *Id*. To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *Oceanic Inn, Inc., v. Sloan's Cove, LLC, 2016 ME 34,* ¶ 26, 133 A.3d 1021. Cross motions for summary judgment "neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se." *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646 (quoting *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)).

When considering insurance contracts, the duty to defend is broader than the duty to indemnify. *Penney v. Capitol City Transfer, Inc.,* 1998 ME 44, ¶ 5, 707 A.2d 387; s*ee Elliot v. Hanover Ins. Co.,* 1998 ME 138, ¶ 11, 711 A.2d 1310. Whether an insurer has a duty to defend in a particular case is a question of law. *Id.* The Court analyzes the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy. *Id.* "If a complaint reveals a '*potential* . . . that the facts ultimately proved may come within the coverage,'

a duty to defend exists." *Id.* (quoting *Travelers Indem. Co. v. Dingwell,* 414 A.2d 220, 226 (Me. 1980)). The facts alleged in the Underlying Complaint need not make out a claim the specifically and unequivocally falls within coverage. *Union Mut. Fire Ins. Co. v. Inhabitants of Topsham,* 441 A.2d 1012, 1015 (Me. 1982). Accordingly, where the events giving rise to the Underlying Complaint may be shown at trial to fall within the policy's coverage, an insurer must provide the policyholder with a defense. *Harlor v. Amica Mut. Ins. Co.,* 2016 ME 161, ¶ 8, 150 A.3d 793.

Maine Law resolves ambiguities in insurance contracts in favor of the insured. *Acadia Ins. Co. v. Vermont Mut. Ins. Co.,* 2004 ME 121, ¶ 5, 860 A.2d 390. A provision of an insurance contract is ambiguous if it is reasonably susceptible to different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought. *Travelers Indem. Co. v. Bryant,* 2012 ME 38, ¶ 9, 38 A.3d 1267. Maine Courts construe policy exclusions "strictly against the insurer and liberally in favor of the insured." *Union Ins. Co.,* 521 A.2d 308, 311 (Me. 1987). Finally, when interpreting contracts, "specific terms and exact terms are given greater weight than general language." *Dow v. Billing,* 2020 ME 10, ¶ 21, 224 A.3d 244 (quoting Restatement (Second) of Contracts § 203(c). Am. Law Inst. 1981). In the case of conflict between general and specific terms, the specific terms are more likely to express the meaning of the parties. *Id.*

## BACKGROUND

Central to both motions for summary judgment are: 1) the Policy, and 2) the underlying complaint. True and complete copies of both documents have been included in the Stipulated Record and marked as exhibits A and B respectively.

## I.      The Policy

Plaintiffs David Pottle, Lighthouse, and Fisheries are all named insureds under the insurance policy with Acadia, effective 10/14/18 to 10/14/19. (Ex. A at 3-4). According to the Policy, Acadia promises to "pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury'. . . to which this insurance applies" and states that it has the "duty to defend the insured against any 'suit' seeking those damages." (Ex. A at 135). The policy also states that it applies to "bodily injury" when such injury is caused by an "occurrence" that takes place in the "coverage territory" during the "policy period." (Ex. A at 135).

Pursuant to the Policy's Watercraft Exclusion, Acadia's duty to defend ceases when a bodily injury arises out of "the ownership, maintenance, use or entrustment to others of any. . . watercraft owned or operated by. . . any insured. Use includes operation and 'loading or unloading." (Ex. A at 138). However, according to the Policy, "loading and unloading" does not include "the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the. . . watercraft. (Ex. A at 148). Further, the Watercraft Exclusion does not apply to "a watercraft you do not own that is. . . less than 26 feet long." (Ex. A at 138).

The Policy also features two endorsements: an exclusion for volunteer workers ("Volunteer Workers Endorsement") and a General Liability Ultra Plus Endorsement (the "Ultra Plus Endorsement"). (Ex. A at 134.) For the purposes of this case, the Volunteer Workers Endorsement does not modify the Watercraft Exclusion. However, the Ultra Plus Endorsement extends the length of Watercraft that avoids the Watercraft Exclusion from "26 feet" to "51 feet". As a result, the Watercraft Exclusion does not apply to watercraft "you do not own that is. . . less than 51 feet long."

## II.    The Underlying Complaint

The Underlying Complaint was filed in federal court by Randy Morgan, an employee of Plaintiffs in this matter. Morgan alleges that Pottle or Fisheries, or both, owned a fishing vessel named Ocean Warrior (the "Vessel"), and that Pottle or Fisheries, or both, operated the Vessel. (Underlying Compl. ¶ 7). The Underlying Complaint alleges that Morgan suffered serious injuries in an accident on the Vessel that occurred on August 30, 2019, while he was acting in the course of his employment by Pottle, Fisheries, or both. (Underlying Compl. ¶ 17-19, 31, 44). Morgan alleges that at the time of the accident, the Vessel was tied up to a wharf in Eastport, Maine, where a crane, attached to the wharf, was being used to move equipment and/or bait down onto the Vessel. (Underlying Compl. ¶¶ 10-12, 17-18). Morgan alleges he was injured when the equipment being lowered down onto the Vessel by the crane became dislodged and fell onto him. (Underlying Compl. ¶¶ 18-19).

In Count I, Morgan alleges that his employer at the time of the accident, Pottle or Fisheries, or both, are liable to him because their negligence caused his injuries. (Underlying Compl. ¶¶ 31-33). In Count III, Morgan alleges that Lighthouse is liable to him because its negligence (imputed to Lighthouse based on the negligence of its employee Pottle) caused his injuries. (Underlying Compl. ¶¶ 13, 41-42).

## DISCUSSION

## I.    Acadia Breached its Duty to Defend Plaintiffs Against the Underlying Complaint

Acadia invokes the Policy's Watercraft and Employers' Exclusions to justify its denial of a legal defense of Pottle, Lighthouse, and Fisheries. Generally, the Watercraft Exclusion applies if the bodily injury described in the Underlying Complaint arose out of the "ownership, maintenance, use, or entrustment to others" of the Vessel. (Ex. A at 138). Meanwhile, the

5

Employers' Exclusion excludes from coverage bodily injuries arising out of employment by the insured.

## A. Definition of Use in the Watercraft Exclusion

The Policy does not define the terms "ownership", "maintenance", or "entrustment to others" featured in the Watercraft Exclusion. Rather, the Policy only defines one such term: "use." Because a plain reading of the Underlying Complaint indicates that it does not assert Morgan's injury arose from ownership of, maintenance on, or entrustment of the Vessel, the Court will begin by analyzing the application of the term "use" to the allegations featured in the Underlying Complaint.

In context of the Policy, "use" serves as a generic, catch-all term compared to the more limited concepts of ownership, maintenance, and entrustment to others. For this reason, the Policy endorses a broad definition of the term, stating that, "use includes operation and 'loading or unloading.'" Morgan does not assert that he was injured while operating the Vessel. Rather, he alleges that he was injured when equipment being lowered onto the Vessel by a crane became dislodged and fell onto him. (Underlying Compl. ¶¶ 18-19). Such an activity can be described as the "loading" of the Vessel. Therefore, under the Policy's general definition of "use", Morgan's injuries arose from the use of the Vessel, and would be subject to the Watercraft Exclusion.

The Policy, however, specifically excepts "the loading of. . . property by means of a mechanical device, other than a hand truck, that is not attached to the. . . watercraft" from the Watercraft Exclusion. (Ex. A at 148). Morgan's injury, as alleged in the Underlying Complaint, arose precisely out of the action described above: the loading of property onto the Vessel by a mechanical device (the crane) that was not attached to the Vessel, but was attached to the wharf

6

instead. Thus, the action leading to Morgan's injury falls directly under this exception to the Watercraft Exclusion.

## B. Acadia's Broad Interpretation of the Watercraft Exclusion

In its motion for summary judgment, Acadia takes an alternative reading of the Watercraft Exclusion, and contends that indeed, Morgan's injuries arose "out of the ownership, maintenance, use or entrustment to others" of the Vessel. In support of its interpretation, Acadia cites the broad interpretations of exclusions in insurance contracts, both in Maine and otherwise. *See First Specialty Ins. Corp. v. Me. Coast Marine Constr., Inc.,* 532 F.Supp.2d 188, 195 (D. Me. 2008); *See also Allstate Ins. Co. v. Safer,* 317 F.Supp.2d 1345, 1349 (M.D. Fla. 2004)("The language 'arising out of the ownership, maintenance or use. . . of an auto' is 'broader in meaning' than the term 'caused by' and means 'originating from', 'having its origin in', 'growing out of', 'flowing from'. . .or 'having a connection with 'the use of the vehicle.'"). Acadia therefore asserts that in this case, the Watercraft Exclusion is triggered as to all Plaintiffs if the Underlying Complaint originates from, has its origin in, grows out of, flows from, or has any connection to the ownership, maintenance, use or entrustment to others of the Vessel. In light of this reading, Acadia argues, the allegations of the Underlying Complaint arise from both the ownership and the use of the Vessel.

First, Acadia contends that inclusion of the term "ownership" in the Watercraft Exclusion reflects the intent of the drafters to draft the exclusion as broadly as possible to encompass any possible scenario where an accident might have any connection to watercraft. Acadia asserts that because Plaintiffs cannot dissociate Morgan's injury from the fact that Plaintiffs owned the Vessel, the injury arose out of said ownership. Again, a provision of an insurance contract is ambiguous if it is reasonably susceptible to different interpretations or if any ordinary person in

7

the shoes of the insured would not understand that the policy did not cover claims such as those brought. *Travelers Indem. Co. v. Bryant,* 2012 ME 38, ¶ 9, 38 A.3d 1267. Reasonable people could, at the very least, defend an interpretation of the Policy that treats the commas between ownership, maintenance, use or entrustment as disjunctive, and that categorizes certain activities within each of these broad buckets. Instead, Acadia's interpretation connects all activities to Plaintiffs' ownership of the Vessel, no matter how tangential. Thus, the Policy is, in this regard, ambiguous. Because Maine Law resolves ambiguities in insurance contracts in favor of the insured, the Policy must be construed in favor of Plaintiffs. *Acadia Ins. Co. v. Vermont Mut. Ins. Co.,* 2004 ME 121, ¶ 5, 860 A.2d 390.

Second, Acadia asserts that although loading and unloading by means of a mechanical device not attached to the watercraft is excepted from the Watercraft Exclusion, the definition of "use" is not limited to loading and unloading. Acadia is correct here; the definition of use is not limited to loading and unloading. It also includes operation of the Vessel. However, Morgan's complaint does not allege that he was operating the Vessel at the time of his injury. Thus, the Court finds that the Watercraft Exclusion does not apply to the allegations of the Underlying Complaint.

### C. The Employer's Exclusion

In addition to the Watercraft Exclusion, Acadia also raises the "Employer's Exclusion" featured in the Policy. According to the Employer's Exclusion, the Policy does not apply to "bodily injury" to "an 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." (Exhibit A at 136). The Underlying Complaint alleges that Morgan was employed by Pottle, Fisheries, or both. (Underlying Compl. ¶ 31). At least from the perspective of Lighthouse,

8

it is not named as Morgan's employer on the face of the Underlying Complaint. Further, whether Morgan was indeed an employee of Pottle, Fisheries, or both was a fact to be decided at trial. *See Harlor v. Amica Mut. Ins. Co.,* 2016 ME 161 at ¶ 8. Here, based on the allegations of the Underlying Complaint, the Employer's Exclusion does not exclude the right of any of the Plaintiffs to a defense under the Policy.

Comparing the Policy to the Underlying Complaint as required by Maine law, the Court finds that neither the Watercraft Exclusion, nor the Employer's Exclusion nullify Acadia's duty to defend Plaintiffs. Specifically, the Court finds that the activity leading to Morgan's injury as alleged in the Underlying Complaint is excepted from the Policy's Watercraft Exclusion. Although the term "use" captures more than loading and unloading, the Underlying Complaint does not allege that Morgan was operating the Vessel. Acadia's broad reading of the Watercraft Exclusion, and in particular the term "ownership", is not the only reasonable interpretation and the language is therefore ambiguous in this regard. Finally, whether or not Morgan was an employee of Pottle, Fisheries, or both, is a fact to be determined at trial, rendering the Employer's Exclusion inapplicable. Accordingly, The Court finds that Acadia breached its duty to defend Plaintiffs from the Underlying Complaint.[1]

II. **Plaintiffs Pottle, Lighthouse, and Fisheries are Entitled to Court Costs and Reasonable Attorneys' Fees**

Because Pottle was entitled to a defense under the Policy, he is entitled to his costs and reasonable attorneys' fees in this action. In a declaratory judgment action pursuant to "Title 14, chapter 707 to determine an insurer's contractual duty to defend and insured [who is a natural

---

[1] Plaintiffs also assert that summary judgment is warranted in their favor because the "Separation of Insureds" provision in the Policy means that even if the Watercraft Exclusion or Employer's Exclusion excludes a right to a defense for one of the Plaintiffs, that would not exclude the right to a defense for any of the other named insureds. However, because the Court has held that the Watercraft Exclusion is inapplicable to the Underlying Complaint, it need not address the "Separation of Insureds" provision, nor the length of the Vessel.

9

person] under an insurance policy, if the insured prevails in such action, the insurer shall pay court costs and reasonable attorneys' fees. 24-A M.R.S. § 2436-B(2).

With respect to an insured who is not a natural person, the Court must determine whether Acadia's duty to defend is "clear" for the purpose of an award of court costs and attorneys' fees. *See Pro Con. Inc., v. Interstate Fire & Casualty Co.,* 831 F.Supp.2d 367, 372 (D. Me. 2011) (applying Maine law). Whether the duty to defend is "clear" for the purpose of an award of attorneys' fees depends on an evaluation of Maine law as it existed at the time of the filing of this action. *Id.* An award of attorneys' fees is not proper if the law is unsettled with respect to the duty to defend a particular action or if the possibility that the insurance policy requires coverage is not something that is obvious on the face of the complaint. *Id.*

It is obvious from the face of the Underlying Complaint that Morgan alleges serious bodily injury arising out of an incident in which the Vessel was being loaded by means of a crane attached to the wharf (and not the Vessel). Acadia therefore should have been expected to understand that under its Policy, the Watercraft Exclusion does not apply to the Underlying Complaint. Maine law has long resolved ambiguities in favor of the insured, and with respect to the Underlying Complaint, the Policy's duty to defend is, at best ambiguous. Because the duty to defend Plaintiffs from the Underlying Complaint is clear, the Court concludes that Plaintiffs are entitled to an award of court costs and reasonable attorneys' fees.

**CONCLUSION**

In considering the Stipulated Record and comparing the Policy to the allegations of the Underlying Complaint, the Court has determined that Acadia has a duty to defend Plaintiffs therefrom. Further, the Court has found that this duty to defend was clear based on the face of the Underlying Complaint. Accordingly, the Court grants Plaintiffs' partial motion for summary

10

judgment, and awards Plaintiffs court costs and reasonable attorneys' fees. The Court denies Acadia's motion for summary judgment. Plaintiffs' damages in this case shall be determined in the course of further proceedings in this case, including an evidentiary hearing if necessary.

The entry will be: Plaintiffs David Pottle, Lighthouse Lobster & Bait, LLC, and Ocean Warrior Fisheries, LLC's partial motion for summary judgment is GRANTED. Plaintiffs' costs and reasonable counsel fees are awarded. Acadia Insurance Company's motion for summary judgment is DENIED. The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).


Dated:  December 7, 2020                    /s/ M. Michaela Murphy
                                            Justice, Business and Consumer Court

DAVID POTTLE, et al.

v.

ACADIA INSURANCE COMPANY

Party Name:                                 Attorney Name:


*David Pottle*                           **Brent Singer, Esq.**
*Lighthouse Lobster & Bait, LLC*            Ruddman & Winchell
*Ocean Warrior Fisheries, LLC*             84 Harlow St
                                        Bangor, ME 04402


*Acadia Insurance Company*            **Hillary Bouchard, Esq.**
                                        Thompson Bowie & Hatch, LLC
                                        415 Congress Street, 5th Floor
                                        Portland, ME 04112