STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-22-168

MMG INSURANCE COMPANY,    )
   )
       Plaintiff,    )
   )
v.    )
   )
JODI GREENLAW, Individually and as    )
Personal Representative of the Estate of    )
PHILIP JAMES GREENLAW,    )
   )
       Defendant.    )

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

Before the Court is Plaintiff MMG Insurance Company's ("MMG") Motion for Summary Judgment. For the reasons set forth herein, the motion is GRANTED.

**FACTUAL BACKGROUND**

This case arises from a wrongful death. On May 20, 2019, Joseph McNeely visited the home of his friend, Philip Greenlaw. (Pl. S.M.F. ¶¶ 2, 14.) Greenlaw was hosting a weekly event for an informal social group of which both Greenlaw and McNeely were members. (Pl. S.M.F. ¶ 4.) The group was organized around a shared interest in motorcycles, and the members gathered "to ride motorcycles, eat food, drink beer, and tell stories." (Pl. S.M.F. ¶ 5.) McNeely, who owned a landscaping business, attended the May 19 gathering both to socialize and to measure Greenlaw's lawn for hydroseeding. (Pl. S.M.F. ¶¶ 2, 15-16.) Although the motorcycle group was formed for a social purpose, its members often engaged in business together. (Def. S.A.M.F. ¶ 7.) McNeely arrived around 5:45-6:00 p.m. that evening and measured the yard soon thereafter. (Pl. S.M.F. ¶¶ 14-15.) The measuring took around five to fifteen minutes, after which the two men rejoined the rest of the group. (Pl. S.M.F. ¶¶ 17, 21.)

REC'D CUMB CLERKS OFC
JUN 8 '23 AM11:30

1

Later that evening, after most of the group had left, Greenlaw initiated a wrestling match with McNeely, something he had done many times before. (Pl. S.M.F. ¶¶ 25-26.) Both men were inebriated. (Pl. S.M.F. ¶¶ 21, 23-24.) As they were wrestling, McNeely put Greenlaw into a chokehold. (Pl. S.M.F. ¶ 27.) Although McNeely released Greenlaw after Greenlaw tapped, Greenlaw lost consciousness and could not be revived, despite the efforts of both McNeely and the Emergency Medical Technicians who responded to the scene. (Pl. S.M.F. ¶ 27.)

At the time of the incident, McNeely held a businessowners insurance policy with MMG. (Pl. S.M.F. ¶ 30.) The insurance policy provides liability coverage for bodily injury, but only if the injury occurs "with respect to the conduct of a business." (Pl. S.M.F. ¶ 33.) MMG filed this lawsuit on May 6, 2022, seeking a declaration by the Court that McNeely is not an insured under the MMG policy because Greenlaw's death did not occur with respect to the conduct of McNeely's landscaping business. (Compl. ¶ 16.) The defendant in this matter is Philip Greenlaw's wife, Jodi Greenlaw, appearing both individually and as personal representative of Philip Greenlaw's Estate (collectively, the "Estate"). MMG moved for summary judgment on February 2, 2023. The Estate's opposition was docketed on March 6, 2023.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when review of the parties' statements of material fact and the record evidence to which they refer, considered in the light most favorable to the nonmoving party, indicates that there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Remmes v. The Mark Travel Corp.*, 2015 ME 63, ¶ 18, 116 A.3d 466. A fact is material if it has the capacity to affect the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. An issue is

2

genuine if the factfinder must choose between competing versions of the truth. *Id.* Summary judgment may be used to "isolate a question of law which will be dispositive of the case." *Magno v. Freeport*, 486 A.2d 137, 141 (Me. 1985).

## DISCUSSION

"The meaning of language contained in an insurance contract is a question of law." *Concord Gen. Mut. Ins. Co. v. Est. of Boure*, 2021 ME 57, ¶ 15, 263 A.3d 167 (quoting *Haskell v. State Farm Fire & Cas. Co.*, 2020 ME 88, ¶ 15, 236 A.3d 458). Unambiguous policy language is interpreted "in accordance with its plain meaning." *Id.* Ambiguous policy language is construed "strictly against the insurance company and liberally in favor of the policyholder." *Id.* "A provision of an insurance contract is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought." *Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 9, 38 A.3d 1267 (quoting *City of S. Portland v. Me. Mun. Ass'n*, 2008 ME 128, ¶ 7, 953 A.2d 1128).

As stated above, the MMG insurance policy provides coverage "only with respect to the conduct of a business." Although the phrase "conduct of a business" is not defined in the policy, the Court finds that it is unambiguous. *See Am. Policyholders' Ins. Co. v. Kyes*, 483 A.2d 337, 340-41 (Me. 1984) (finding "conduct of a business" unambiguous); *see also Emps. Mut. Cas. Co. v. Kangas*, 245 N.W.2d 873, 875-77 (Minn. 1976); *Rayburn v. MSI Ins. Co.*, 2001 WI App 9, ¶ 14, 240 Wis. 2d 745, 624 N.W.2d 878. It is not reasonably susceptible to differing interpretations, and any ordinary person would understand that it only covers conduct undertaken for a business purpose. The Court thus interprets the phrase according to its plain meaning.[1] *Travelers*, 2012 ME

---

[1] The Estate argues that whether McNeely was acting with respect to his landscaping business is a question of fact and that this matter is thus inappropriate for summary judgment. There are no genuine issues of material fact before the Court; the parties largely agree as to what occurred on the evening of May 20, 2019. The question of whether those

3

38, ¶ 9, 38 A.3d 1267. Here, the plain meaning of the policy language is that liability coverage is limited to times when the policy owner, McNeely, is acting with respect to the conduct of his landscaping business. *See Am. Policyholders' Ins. Co.*, 483 A.2d at 340-41 (no coverage because the "accident was not business-related").

Similar cases have been decided in Maine. In *Travelers*, a businessowner exited his vehicle while stopped at a traffic light and assaulted the driver of the car in front of him. 2012 ME 38, ¶ 3, 38 A.3d 1267. The Superior Court (Cumberland County, *Mills, J.*) determined that even if the businessowner was traveling to work in his work vehicle,[2] his "assaultive conduct under these circumstances was not for the purpose of [his] business." *Travelers Indem. Co. v. Bryant*, No. CV-10-359, 2011 Me. Super. LEXIS 136, at *16 (July 11, 2011). The Superior Court granted summary judgment to the insurance company. *Id.* The Law Court affirmed, holding that whether or not the businessowner was on his way to work, his assault on the other driver did not occur with respect to the conduct of his business, and therefore the businessowner was not an insured. *Travelers*, 2012 ME 38, ¶¶ 10-11, 38 A.3d 1267.

In *American Policyholders' Insurance Company v. Kyes*, the minor son of married motel owners accidentally discharged a rifle inside the motel, injuring a personal guest of the family. No. CV-81-294, 1984 Me. Super LEXIS 21, *1-2 (Feb. 2, 1984). The Superior Court (Somerset County, *Brody, J.*) entered a decision and order declaring that the insurance company had no duty to defend or indemnify the family. *Id.* at *5. The Superior Court determined that although the policy covered business-related incidents that occurred in the motel, it did not cover the incident at issue, which occurred when the son and his guest were "preparing to go squirrel hunting." *Id.*

---

events are covered by an unambiguous insurance policy is a question of law that is appropriate for summary judgment. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989.

[2] Whether the businessowner was traveling to work at the time of the assault and the extent to which he used his personal vehicle as a work vehicle were both in dispute.

4

The Law Court affirmed, holding that even though the shooting occurred on the premises of the business, the social nature of the interaction supported the trial court's finding that the shooting did not occur with respect to the conduct of the motel business. *Am. Policyholders' Ins. Co.*, 483 A.2d at 341.

Here, McNeely drove to Greenlaw's house in his work vehicle, wearing his work clothes, and when he arrived he engaged in conduct related to his landscaping business. However, after he finished measuring the lawn, McNeely re-joined the party, and he considered himself to be off duty for the evening. (Pl. S.M.F. ¶ 19; McNeely Dep. 46:20-25.) Greenlaw's death occurred hours later, while he and McNeely were inebriated and wrestling. Regardless of their earlier business dealings, the wrestling itself was not business-related. *See Reese v. George*, 2014-Ohio-2760, 15 N.E.3d 379, 385 (Ohio Ct. App. 2014) (the court "must look to [the policy owner's] alleged actions themselves—and not to the events leading up to those actions—to determine whether they were business related or personal in nature"). Because Greenlaw's death did not occur with respect to the conduct of McNeely's business, McNeely is not an insured under the policy and MMG has no duty to indemnify him.

Accordingly, the Court grants MMG's motion for summary judgment.

**Entry is:**

Plaintiff's Motion for Summary Judgment is Granted. The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 6/8/23

John O'Neil Jr.
Justice, Maine Superior Court

5